Mr. Cushing, is there something you thought you needed to tell us? We just realized that the two to ten hours in the figure that he just pointed to, I had to do this. If you need to provide a supplemental statement in writing to which Hoke can have a response, we will receive it. Thank you. Thank you. Okay, the next argued case is number 16, 1182. In Re Shore, Mr. Simmons. Good morning, Your Honor. May it please the court, I am John Simmons and I represent the patent applicants, Michael Shore and Stuart Dwork. One of the main issues is, throughout this prosecution, the oversimplification of our claim versus the bolstering of the prior references. None of the prior references, taken alone or in combination, cited by the United States Patent and Trademark Office, include the following element. And this is the element that gets boiled down by all the patent office. A written instrument associating ownership rights and a portion of the power received from the alternative energy power generator with ownership of at least one of the real estate properties. That claims at A549 in the joint appendix. The examiner, the board, and now the director have all oversimplified this claim element, ignoring words of the claim in order to apply the prior references. In other words, they're picking words out in isolation instead of reading the claim as a whole. For example, the examiner's office action at 694 states, although Rassler does not expressly show a written instrument associating partial ownership rights and the received power, however, Trico shows the real estate property owners who are members of the utility cooperative enter into written agreements where they would own the power generated by the cooperative as well as its assets. How can printed matter or written instrument create non-obviousness when the other components are well known? Okay, so that's part of the second argument I have, but I'll jump to that to place the court. In this alternative argument, so the board and the director have both raised that for the first time. That wasn't raised by the examiner in seven years of prosecution. When they raised this issue, they rely on the conclusion that in no way does the written instrument depend on the generator, the distribution station, or the residential properties, and these elements do not rely on the written instrument. So the printed limitation should not be afforded a patentable weight. But this court has held in Gulak, which is also cited in the case relied upon King Pharma by the director, under section 103, the board cannot dissect the claim, excise the printed matter from it, and declare the remaining portion of the mutilated claim to be unpatentable. The claim must be read as a whole. You're emphasizing the patentable importance of the printed matter. But it's the actual tying of the ownership rights in the power generated by the alternative energy source with the ownership rights in the property, which is different than the prior art. In the cases where they found that the printed matter had no patentable weight, they acknowledged that everything else was already known and obvious. In this case, none of the prior references show tying of the power generated by an alternative power generator with the ownership rights in the property, so the two go hand in hand. It's quite a trivial difference, isn't it, tying it to the property versus tying it to the owner of the property? Well, it's not a trivial difference in this way, Your Honor, is that when the property conveys the ownership rights in this alternative power generator go with the ownership rights in the property as compared to simply signing off for power from Pepco or Virginia Power and Electric. So in this case, different than the King Pharma case. In the King Pharma case, as they said in the printed matter, which were instructions, look, just take this with food and it's going to make it more bioreactive. In this case, we're not saying something that was already known 30 years ago. We're saying we're tying ownership rights in this alternative energy power generation with the property itself so that if you have, say, a subdivision with 10 houses, the power generator as part of the subdivision is tied to the properties. So that's why it's different than the instructions in King Pharma, for example. And that's why we believe it's non-trivial. May I continue? I have a question. If you're trying to decide whether or not the printed matter gets patentable weight, yes or no, is that a fact question? I think it is probably a mixed question of fact and law, but I'm not positive It's sort of important because we have a standard of review here. Right. So in the case in Gulak, I believe that the court was the one that found that it could be important to the claim, so I think it's more of a matter of law. But I don't know the precise answer because Gulak, King Pharma, and Nagai, which are the three main cases cited, none of them actually discussed that particular issue to my knowledge. It's an important point because if it were a fact question, right, we'd be reviewing it for substantial evidence coming from the PTO. Right, and as the PTO never addressed it in the underlying case prior to the board, there was no Are you arguing that that's a procedural flaw that's reversible? Not that the examiner didn't raise this issue, but the board did. So there was never any finding of fact by the examiner. So I would have to say that they're making it a matter of law. Well, it wasn't waived by the PTO because they're reviewing a board decision, right? Correct. We didn't argue that. So moving on. So the fact that it wasn't raised below is irrelevant? It was. I'm sorry, can you say that? Can you say it wasn't raised at the examiner level? That's irrelevant. Right, because at the board level they didn't do any finding of fact. They just reviewed the examiner's documents. So back with respect to the prior art references. Again, because we believe that the written instrument limitation should be given patentable weight because it does, in fact, tie the ownership of the real estate property with the alternative power generator and the portion of power being generated, which is new and non-obvious, not shown in the prior art references. Going back to the prior art references, the examiner relied on Rassler. And Rassler is, if you refer to pages A763 and 764, it's a barely enabled one and a half page article about a pilot program for alternative power generation through a fuel cell. The fact that it may pass written muster under the written description issue doesn't necessarily mean that it's new and non-obvious in patentability terms. Right, but what the... You just suggested that a moment ago. Well, I'm suggesting it because of this reason, Your Honor. Because what the examiner relied on, what the board relied on, and what the directors adopted is that Rassler shows that there's ownership of these alternative power sources. And, in fact, when you read the reference... But the board said that conventional contract terms between suppliers of electricity and purchasers meet this limitation. Because a conventional contract between a supplier like Pepco, a power company, and a customer does not convey ownership. The power company could cancel the power rights at any time. You're paying for a service. You don't actually own that right. And that's what we're saying... Probably depends on the terms of the contract. Right, well, the terms of a conventional contract are what's distinguished in the specification of this application. So what the point of this application is that there's actually ownership rights in the power source and the power being generated from the power source with the property ownership so that it conveys with the property. And that's supported in the specification as outlined in our opening brief at pages 18 and 19. It shows all the specification support for that concept. And the actual article by Rassler does not mention who owns the pilot plants. The pilot plants actually says the furnace-sized units, which can produce 3 to 7 kilowatts of electricity, could become a practical reality within about two years. And this is by the author, Dan Rassler, of a third party. So we don't know from this article whether the co-op owns the power generator, whether the property owner owns the power generator, or more likely, based on this article, that a third party was piloting. Do you know what ownership means? Yes, it would. Ownership rights. As ownership, as read in light of the specification. But the way I read the board was saying ownership has a very, very broad concept. And ownership, the user of the electric power has an ownership interest when the utility promises to give you the power. And we dispute that. I understand that. But again, you're coming down to a standard of review. Right. And so in the brief, we outline the fact that even in its broadest interpretation, the claim elements must be read in light of the specification. And in the specification, that actually is criticized. So the fact that the contractual relationship between a power supplier like a Pepco or another utility is it's criticized in the specification as not being a good thing. Again, we want the power to be conveyed with the property ownership. And that's what's suggested in the specification. And the claim element should be read in light of the specification, even given its broadest possible interpretation. And we've argued that throughout the last seven years of prosecution consistently. So to try and focus the argument, then, it is that the unobvious element is that the power is conveyed with the property. Yes, Your Honor. However we get there, whatever written instruments or whatever. That's correct, Your Honor. And that's been consistently argued throughout the entire seven years of prosecution. Then with respect to how they say that the examiner acknowledges that the Rassler one and a half page article does not, and the examiner's answer at A532 states, however, since no written agreement is expressly shown by Rassler, which none is, the cooperative agreement of Trico is only used to show a written agreement. And then at A533, however, Trico shows that the real estate property owners who are members of utility cooperatives enter into written agreements where they would own the power generated by the cooperative as well as its assets. Trico does not say that. In fact, the examiner at the office action at A694 and A617 and the board at A5 rely on Trico paragraph 213G. And if I could refer you in the joint appendix to page A737, this is all that 213G says. So Trico was a specification for a cooperative's line extension program because cooperatives originally were for rural areas. They weren't generating power. They were trying to get infrastructure out to rural areas. So this whole specification is more about the actual line and distribution system. So 213G at page A737 simply says, ownership of facilities. Underground facilities shall be installed, owned, operated, and maintained as provided in sections 158, 159, and 160 of this line extension policy. If you refer back to those paragraphs, they only describe rates away for line extensions and facility relocation. So this terse disclosure in Trico is really not directed to ownership of the power generator. It's directed to ownership of the lines, so the distribution lines. So this really doesn't enhance the rest or the base reference by saying that it's a written agreement that shows ownership of the power generator or ownership of the property for that matter. So this combination of Rassler and Trico and even the Rassler, Trico, and Carroll, which is used for Claim 14, is lacking an element of the claim. So if this claim is given patentable weight, which we argue it should be because it's more like the Gulag reference. All right, let's hear from the other side. Yes, Your Honor.  Thank you, Your Honor. Ms. Stewart. May it please the Court. What Schor is arguing is that the words of the claim require an interpretation of permanency, and they even go so far to say really that the instrument has to be incorporated into the deed. And these kinds of limitations are not found in the claim language, and while they are discussed in some ways in the specification, different embodiments are discussed which contemplate a more flexible arrangement. So the classic problem we have here with the patent holder is that they're trying to make the claims more rigid than either the words of the claims allow or the specification allows. Was the objection that the claims were too broad? Are there some specific claims that appear to solve the objection you've just raised? Well, I'm not sure what Your Honor is referring to. There are some dependent claims that talk about the optional feature. But starting with the independent claims, the question is, does it require a permanent relationship and common ownership? And those concepts are not included in the specific language of the claim, so we have to look at the specification to see, is the applicant his own lexicographer? Has he defined those terms in such a way, which he can do. He can say associating means permanent. He can say that the written instrument must be in the deed, but that's not what he said. He said it can be optional, inseparable. You're not saying that the basis for the rejection was that it was obvious to have community cooperative ownership of energy sources, but that the problem is how it was claimed? Well, I think in order to apply the prior art references, we have to have an understanding of how the associating term should be defined. And that is really kind of bubbled up in the course of the prosecution examination of the claim. So if we turn to the prior art references, there isn't any dispute that the references teach the tangible elements of the claim, the power source, the distribution station, the residential real estate. Well, how does a conventional contract of a user of electricity, let's say PEPCO, how does that read on written instrument associating ownership rights, et cetera, et cetera? The rationale of the board, as I understand it, was an ordinary utility commercial contract. This language is broad enough to read on that. Just walk me through it. Why is the ordinary commercial relationship of a user of power with PEPCO a written instrument that associates ownership rights and a portion of the power received with ownership of some real estate? Well, to clarify, I think what the board did is it adopted the examiner's— Are you having trouble understanding my question? No, I understand your question. Can you answer the question directly? Yes, Your Honor. First, to answer your question, the board said that the reason why a conventional arrangement can work is because there's ownership. I mean, typically, you own your home. It's common to own your home. It's common for the power company to own their power. I got the ownership of the home or whether you're a leaseholder, perhaps. But what I'm curious to know is why that typical contract associates ownership rights and a portion of power. The reason why the board came to that conclusion is because the term association is left so undefined in the claims and specification. But what I wanted to clarify, for your honor, was that while the board— It says in a portion of the power received is the notion that once I turn my light switch on and I'm using the juice, I am receiving the juice and therefore own it. Is that the point? You hear what I'm talking about? I think, if I understand your honor, the point that the board was trying to make is it doesn't say common ownership. So it says association of ownership of the power and association of ownership of the residential real estate, but it doesn't say that those two owners have to be one and the same person. And that's why I think the board was trying to explain to the applicant after adopting the reasoning— So the ownership is in EPCO, where they own the electricity, and they're shooting it to somebody that owns a house, and that's sufficient. Correct. And I think what the board was trying to say is we've adopted the reasoning of the examiner, which I think assumed for the purposes of argument that a narrower construction was appropriate. But then in responding to the arguments made on appeal, the board is pointing out to the applicant that under the narrower interpretation that you're advocating for, it's taught by the references. But you kind of have a problem with how you're going to construe your claims, because your claims don't even say common ownership. And they don't say permanent, and they don't say there has to be a deed. So I think the board is trying to teach through its decision how it's reading the claims. But fundamentally, the first step the board does, it adopts the reasoning of the examiner. And the examiner assumes for the sake of argument that there is common ownership. And he finds that those elements are taught in the prior art and the combination of Rassler and Draco. So why isn't this particular limitation we've just been talking about entitled a patentable weight? Well, first the patent office gives it patentable weight and applies the prior art. But it goes beyond that in the alternative. But there's an alternative argument that we don't even need to look at one or three because this limitation just disappeared from the claim. So why so? What's your best shot at reasoning why this particular limitation is not entitled a patentable weight? Well, the classic printed matter case, as your honors well know, is the Miller case where you're creating a measuring cup out of a vessel by applying lines and numbers or words onto the vessel, or creating a ruler from a piece of wood, or Gulak where you had the band that was being created with the numbers put on the band. So there you're applying words to the substrate. It's giving that substrate kind of new structure and meaning. Here we just have a legal instrument. So it's not changing the way the residential property is constructed, the way the power is being supplied, the way it's being distributed, the way it's metered. It's not changing any of that. All it is is taking different tangible pieces and then tying them together with a legal document. What's your view of the test? The challenged subject matter, which is being claimed to have no patentable weight. In order to have patentable weight, it has to impact the functioning of the claim? Right, your honor. It has to have a non-obvious. Just not talk about non-obvious. Procedurally, it has to affect what? It has to affect the invention in some demonstrable way? It has to have a functional relationship. With respect to the system claim, it has to have a functional relationship to the substrate. Here is typically... What's the substrate? The substrate here would have to be one of the tangible objects. It would have to be the properties. It would have to be the power distribution. It would have to be imposed and incorporated into something. Here, it's just an abstract legal relationship tying different tangible pieces together. It's a necessary step. Why is this any different from the software cases that we see, where the computer does the next calculation and puts you into the next phase of performing of the process? One of the next phases is that you have a limitation or a provision in the deed. I think, your honor, you're hitting right to the heart of it, which is in software. The software changes the way, potentially, the system or even the hardware operates. Why does it change? You say you have a software, and you say you add these two components, and that's the next stage. Here, the intervening necessary step is that you have an ownership transfer provision. Well, not having the words of the claims in the example in front of me, it's a little hard to respond. But here, it seems far more abstract than the example that your honor is presenting. What's abstract about a transfer of property? Well, what's abstract about it is that it relies on a legal relationship. One could imagine any different set of tangible objects, and then the fourth limitation of that claim element could be, we're going to sign a legal document that says you own A and B, and I own C, and it goes on from there. Those fall much more nicely into the kinds of claims, the kind of claim elements that haven't been given patentable weight under printed matter than they do under other claim elements which change the function of the system or the method. I don't see that distinction. It would be more helpful to us, I think, if you were to concentrate on the prior art and the basis for the objection. Well, your honor, clearly that is what the examiner did, and that is what the board adopted, and I think it was in part in response to some of the arguments made in the appeal brief to the board that the board felt the need to point out that there are other defects with this claim that go beyond the application of the prior art. But your honor's right. The primary rejection here is based on the combination of a classic KSR obviousness case with familiar elements, known methods, and predictable results. It's that combination of this prior art that renders the claim obvious. Doesn't your case just boil down to a simple proposition from your perspective, which is that a conventional power contract with a consumer satisfies the written instrument limitation? Don't you have to sustain that point in order to win? We don't have to sustain that point because, again, this was the dialogue the board was trying to have with the applicant. The board affirmed the rejection of the examiner, which gave patentable weight to every single limitation and even credited their more- I'm not talking about patentable weight. I'm talking about in the 103 analysis. The only thing that's not in the prior art is a written instrument associating ownership rights. So we've got to say, well, where is there somewhere something like that in the prior art? Because if there's nothing like that in the prior art, there's no 103, right? Right, but the reference here is not a conventional power agreement. That probably would have been sufficient, but the examiner dug deeper and said, I'm going to find alternative power. I'm going to find as close I can to these claims as possible, and I'm going to make the rejection on that basis. And tell us what that was with regard to the written instrument limitation. With regard to the written instrument limitation, it is the- Trico provides the written instrument, and Rassler provides the relationship between the elements. So Rassler has the alternative power. It has the multifamily dwelling. Oh, Trico teaches a writing, correct? No specific writing. Trico teaches a writing, but it's dealing with a cooperative power arrangement between members of a cooperative and the power source. And the way, even in the patent, the term cooperative is used, connotes some kind of common ownership. So I think Trico does more than just providing a written instrument. But again, in response to some of the arguments made by the patent holder, the examiner said, if your concern is a lack of common ownership, let's go back to Rassler. In Rassler, a furnace-sized fuel cell is put in the home, so we can presume that the person residing in that home owned that unit. And so we have- this is a question of what these references teach, so it's a fact question where we're doing it for substantial evidence? Yes. Let's just come back quickly to the patentable weight, the written matter issue. Is that a legal question or a fact question? That's a legal question, Your Honor. Do you have a case that says that? I was looking through the Gulak and the Guy and Miller and DiStefano for that specific statement of the court. I didn't find it, but I'd be happy to provide it to the court after the argument that would assist the panel. Well, back at the time of Miller, people didn't worry about those issues, right? Well, it's usually bound up- the printed matter doctrine usually arises either in a 102 or a 103 case, and so usually when they discuss a standard review in a 102, they're talking about substantial evidence. In a 103, they're talking about the mixed question of fact and law. But I do think printed matter is a judge-made exception to the rule. In a 102, you're talking fact and anticipation. Yes, Your Honor. Here we have 103, so it's a mixed question, and I also think given that it's a judge-made exception to 102 and 103 that it's traditionally thought of as a legal question. But I'd be happy to provide that to the court that would assist the panel. Any more questions? Thank you. Any more questions? Thank you, Your Honor. Thank you, Ms. Stewart. Mr. Simmons. Briefly, Your Honor. Back to the prior- and what does the prior actually show? I think the counsel on behalf of the director just acknowledged that it must be presumed that Rassler shows that if the furnacized units are put into the home, it's owned by the union holder. Unfortunately, it doesn't say that. So the TRACO reference doesn't make up for that deficiency. Ownership is not disclosed in that one-page, one-and-a-half-page article by Rassler, and that's a key phrase used in the claims that have been relied on by the applicants. So in Rassler, it says pilot plants. This may in the future exist, but it doesn't disclose that it's owned by the homeowner, that it's owned by the cooperative, that it's owned by presumably the third party who's running the pilot for the government. So supposedly the examiner has actually said that Rassler inherently discloses this ownership relationship, which inherency, I think in an article like that, has got to be a lot more shown. And TRACO, as the court has pointed out, really doesn't show anything more than the best at best in 213G, ownership of the lines. And then in 202, which I don't know why the examiner didn't rely on the minimum written agreement requirements, it shows each line extension agreement shall at a minimum include the following information. It doesn't say each power delivery agreement, and it just talks about things that are normal in any other agreement for delivering power, name of the applicant, service address and location. It doesn't talk about how the power is going to be associated with ownership to the ownership of the property itself. Do you have any further questions? Okay. Thank you very much for your time. Thank you, Mr. Simmons. Ms. Stewart, the case is taken under submission.